GOODWIN (BETTS v.). See Case No. 1,374.

## Case No. 5,551.

### GOODWIN v. CARTWRIGHT et al.

[2 Hask. 340.][1]

District Court, D. Maine. April, 1879.

JUDGMENT—SATISFACTION—EQUITABLE RELIEF.

1. A defendant in a suit at law, having allowed a judgment to be rendered against himself upon the plaintiffs' stipulation to satisfy and discharge the same upon the performance of certain acts by the defendant, has no relief in equity from that judgment but by the terms of the stipulation.

2. If such stipulation is to become operative only upon the performance by the obligee of certain conditions precedent, which are impossible, in the absence of fraud, it is his fault, and he must abide the condition of the bond.

3. If the condition is, to satisfy a judgment against the obligee when he shall assign to the obligor two claims of his own against the United States then pending in the court of claims, and the obligee did not have such claims pending in that court, he cannot enforce the obligation, because he voluntarily inserted a condition precedent impossible for him to perform.

4. In such case, the obligee can have no remedy in equity.

In equity. Bill asking specific performance of the terms of a stipulation given by the respondents [David G. Cartwright and others] to the orator [Asahel Goodwin] that the former would satisfy and discharge a judgment against the latter, which they have refused to do. Answer, that respondents did not stipulate to satisfy and discharge the judgment until the orator had first assigned to them two claims of his own then pending in the court of claims against the United States, which he had not done. The cause was heard upon bill, answer and proof.

George F. Holmes and Almon A. Strout, for orator.

Henry B. Cleaves and Nathan Cleaves, for respondents.

FOX, District Judge. On the twenty-sixth day of August, 1876, Cartwright & Harrison

[1] [Reprinted by permission.]

[1] [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]

of New York, two of the respondents, recovered in this court a judgment against Goodwin & Maxwell, for the sum of $26,395.24 damages and cost, said action being founded on a prior judgment recovered before the circuit court of the United States, holden at Brooklyn, within and for the eastern district of New York, May 13, 1868, by said plaintiffs, against said Goodwin & Maxwell, as stipulators for the value of schooner Othello, which had been seized upon a libel instituted by Cartwright & Harrison on a bond of bottomry and respondentia given by Maxwell as her master in the port of St. Thomas, Goodwin being the owner of the schooner. [See Case No. 2,483.]

It appears that the Othello had been chartered by the United States at the rate of $50 per day, and while on a voyage from Wilmington, N. C., to New York, with a cargo of munitions of war, the property of the United States, was, by perils of the sea, compelled to make the port of St. Thomas in distress, where on the twenty-fifth day of January, 1866, a bond was executed by the master, pledging vessel, freight and cargo for the payment of $15,535.46 with twelve per cent. interest, in ten days after her arrival at New York. At the time the stipulation was filed in the district court, the Othello had been in the custody of the marshal about one hundred and fifty days, and when she was released, she was again employed by the government under the charter. Goodwin claimed of the United States to be paid under the charter at the rate of $50 per day during the whole time the Othello was in the marshal's custody, and also claimed that the United States should pay its fair proportion in general average, of the expenses at St. Thomas, Mr. Justice Nelson having decided that the cargo, being the property of the United States, was not subject to seizure and attachment, and that a suit could not be instituted against the Government in respect to it. [Case No. 10,611.]

On the same day that the judgment was entered in this court, viz., August 26, 1871, Jos. S. Ridgway, in behalf of Cartwright & Harrison, executed a stipulation as follows: "United States Circuit Court, Maine Circuit. David G. Cartwright and Frederick H. Harrison vs. Asahel Goodwin and Daniel Maxwell. Judgment having this 26th day of August, 1871, been, upon due proof, recovered, entered and perfected in favor of the above named plaintiffs, against the defendants above named, jointly and severally, for the sum of $26,395.24 damages, it is hereby stipulated and agreed that in consideration of the assignment by said Goodwin (the principal debtor upon said judgment) to the plaintiffs, and the execution by said Goodwin to the plaintiffs of any and all instruments in writing requisite and sufficient for that purpose and required by the plaintiffs, and that said Goodwin shall and will whenever requested by the plaintiffs produce any

and all proofs in his possession, in support of two certain claims now pending, prosecuted by and in the name of said Goodwin in the court of claims against the United States, to recover balance of money payable under and pursuant to charter party, and balance of money payable under and pursuant to general average upon bottomry and hypothecation bond of, or upon schooner Othello, and in good faith exercise all reasonable effort and diligence, in concert with the plaintiffs, to establish and to obtain and secure the collection of said claims in said court of claims and any appellate court, the enforcement of and proceedings upon the judgment herein, shall and will be stayed; and further, that, upon the collection of the said claims in full, and the payment therefrom of all reasonable expenses of such collection, and payment of amount then due and owing, upon the judgment herein, to account and pay over to said Goodwin, or his assignees, any surplus that may remain thereof, and execute satisfaction of said judgment herein; and that provided said Goodwin acts in good faith with the plaintiffs, and attends as a witness or otherwise whenever and wherever required by them, (unless necessarily prevented, his necessary traveling expenses being paid,) and produces all papers and other proof in his possession or under his control bearing upon or relating to said claims, and exerts himself faithfully and with reasonable diligence, and to the best of his knowledge, information and ability to secure the collection of said claims, then, upon the termination of said proceedings now pending in said court of claims, the plaintiff shall and will, upon demand by said defendants, satisfy the judgment herein of record, and execute proper release and discharge of the same. Cartwright & Harrison, by Joseph S. Ridgway, N. Y. Dated Portland, August 26, 1871."

The present suit is instituted by Goodwin, to compel a specific performance of this stipulation, to stay proceedings upon and an enforcement of said judgment, and to obtain a release and discharge of the same, and a perpetual injunction against taking out or levying any execution thereon; and the bill avers a performance of all matters incumbent upon him under the stipulation. Ridgway and Maxwell are made respondents. Cartwright and Harrison, in their answer, admit the recovery of the judgment in this court, and that the stipulation was on the same day executed by them by Ridgway as their attorney; but they aver that Ridgway expressly refused to enter into any stipulation whatever, prior to entry of judgment in the action, or in any way to impair or affect said judgment or the validity thereof, or to make the same conditional or dependent on said stipulation, and that they never authorized Ridgway so to do; that as they are informed and believe, Goodwin represented to Ridgway that these two claims were pending

in the court of claims at the time said stipulation was entered into, and at all times theretofore referred to said claims as pending in said court of claims, and wilfully and fraudulently concealed from said Ridgway and these defendants, the fact that said claims were not then pending in said court of claims, but, so far as the same had ever been pending in said court, had already been adjudicated by said court adversely to said Goodwin, as he then well knew that Ridgway had no knowledge of this, but believed the representations of Goodwin to be true, and, relying upon them, entered into said stipulation.

The answer charges fraudulent concealment and misrepresentation by Goodwin as to the pendency of these claims, with the intent to defraud Ridgway and these defendants; they deny that Goodwin has ever been ready and willing to execute to them all or any instruments in writing requisite or sufficient for the purpose of assigning to them said claims referred to in said stipulation, or has ever at any time executed and tendered to them any such instrument, or to furnish proof in support of said claims; but charge him as being in default in all these particulars; and they further charge that the stipulation was entered into upon the complainant's representations and the belief of Ridgway and these defendants, that the two claims in said stipulation referred to were then pending in the court of claims, and predicated upon the assumption that a trial upon the merits thereof was to be thereafter had in said court, but that, by reason of said claims having, prior to said stipulation, been adjudicated adversely to said complainant, there were no such claims as are referred to in said stipulation, pending in said court or in existence, which could be assigned, or in relation to which complainant could do or perform any of the acts, matters and things provided for in said stipulation.

The answer of Ridgway is substantially the same as that of Cartwright and Harrison. The record discloses that August 25, 1871, was assigned for the hearing of the action then pending in this court, the defendants having pleaded the general issue and also certain special pleas, the nature of which is not disclosed at this hearing; that on that day, the parties appeared, and a compromise was proposed by complainant, by his transfer of his claims on the government. After some negotiations, it was the next day agreed with the approval of counsel, that all the special pleas should be stricken from the files, and that judgment should be rendered for the plaintiffs for the balance remaining unpaid upon the judgment, and that this judgment should be released and discharged, and satisfaction entered upon the record upon the performance by Goodwin of certain matters as set forth in the stipulation the same day executed by Ridgway in behalf of the judgment creditors, and upon termination of said proceedings, then pending in said court of claims.

It is strenuously claimed by the counsel of Goodwin and Maxwell and by the complainant, in their depositions in this cause, that although the stipulation recites that the judgment on that day had been upon due proof recovered, entered and perfected in favor of plaintiffs, yet that the whole was but a single transaction, it having been verbally agreed before entry of the judgment, that such stipulation should be given; and in argument it is now contended that the party cannot insist on returning and enforcing the judgment, and at the same time avoid all liability under the stipulation, which it is said was the consideration upon which the debtors assented that judgment should be rendered against them.

Conceding that all that transpired were but parts of one transaction, the only matter of a conditional nature about the whole proceeding was, that Ridgway should execute such a stipulation, which he at once did. The debtors assented to a valid, unconditional judgment, provided that the creditors would obligate themselves to satisfy and discharge the same upon the performance by one of them of certain things, which he had agreed to do. He was satisfied to waive any defense he might have had in the suit, and allow the judgment to go against him, if he could receive such an obligation. The respondents, having executed such an instrument, have performed all that devolved upon them under the parol contract. The stipulation, as executed, was satisfactory to the complainant and his counsel, and all right to any relief from said judgment, therefore, arises from, and is wholly by force of such stipulation; and this certainly must have been the opinion of his counsel at the time of drafting the present bill, as the prayer is, not to vacate and annul the judgment, but that the creditors may be required to perform and fulfill their stipulation, and stay proceedings upon and enforcement of said judgment, and to satisfy the same. Not an intimation is to be found throughout the entire bill, that the judgment was in any way dependent or conditional.

All the redress, therefore, which this complainant can acquire, is by the enforcement of the stipulation thus made in his behalf. It became a valid legal obligation, and his creditors and the court must determine the rights of complainant under this stipulation; by it, the creditors were bound to enter a discharge and satisfaction of their judgment, only upon the performance by Goodwin of certain acts; when these acts were accomplished by him and the cases then pending in the court of claims determined, he could demand of his creditors to do what, by their stipulation, they had contracted to do; but until he had so done, his creditors were under no liability to him by virtue of such stipulation.

What was then incumbent on the complainant, if he would require of his creditors a performance by them of their part under this agreement? Prior to its execution, he had represented to Ridgway that he held two claims against the government; one for the recovery of a balance of money, payable under and pursuant to charter party; the other for a balance of money payable under and pursuant to general average, upon bottomry and hypothecation bond of and upon schooner Othello, which claims were then being prosecuted by and in the name of Goodwin, in the court of claims, against the United States; these claims, he agreed to assign to these creditors, and to execute all instruments requisite to assign the same to them, whenever required so to do by the creditors.

Has Goodwin performed all that was incumbent on him to do, to entitle him to demand of the creditors a release and satisfaction of the judgment? He now admits that, on the twenty-sixth day of August, 1871, there were no proceedings in his behalf pending before said court of claims; and the evidence is conclusive that, prior thereto, he had never instituted but one suit in that court against the United States, which was for the recovery, under the charter party, for the detention of the Othello at New York for one hundred fifty days by the marshal under process from the district court. In that suit, a hearing was had May 4th, and the case was dismissed May 26, 1871, an opinion having been prepared by Drake, C. J., reported in 6 Ct. Cl. 150. An application for an appeal was filed June 1, 1871, by the attorney of the complainant, to whom the record of appeal was delivered December 6, 1871; but it does not appear that the appeal was prosecuted. The complainant admits he was informed of the decision of this suit by the court of claims before August 21, 1871, and that he directed the appeal to be taken.

Soon after the decision of Judge Nelson, an application was made in the name of the complainant, by Ridgway, for the benefit of Cartwright and Harrison, to the proper department at Washington, for payment by the government of its proportion of the general average charges incurred at St. Thomas. The claim exceeded $20,000; an allowance of $6,000 or $7,000 was made on account of this claim, and was received by Goodwin in 1868, and no further steps are shown to have been afterwards adopted to procure the payment of any thing further upon general average; but the suit for detention under the charter party was commenced before the court of claims May 11, 1869.

There never having been but one case in behalf of the complainant at any time pending before the court of claims, and the cause of action therein being restricted to claims under the charter party, and this having been dismissed prior to August twenty-sixth, so that, instead of there then being two claims of the complainant pending before

that court, there were none in fact. The complainant, by the terms of the stipulation, had bound himself, if he would enforce the stipulation against the creditor, to perform that which was impossible as he well knew. This he undertook and promised to do, and until he has complied with his undertakings, he has no right to call upon the judgment creditors to grant him a discharge, which they had stipulated to do only upon the assignment of the pending claims against the government. He, by his own voluntary contract, has created this duty a charge upon himself; and he must first make it good, before any liability attaches to the stipulators, who are not to be called upon to perform this part of the obligation, until complainant has himself complied with all conditions precedent on his part to be performed.

The fact that his contract required of him an impossibility does not relieve him from its performance if he would enforce the contract against the other party; there being nothing illegal in what he had thus agreed to do, and no fraud having been practiced upon him, he thus voluntarily and expressly agreed that he would not demand a release from the judgment until he performed the duty he had assumed, viz., to transfer to the creditors two claims specifically described, and then pending before the court of claims. Such was the contract on his part, and no right of action can accrue to him by force of it, until he first performs that which he agreed to do. Acting deliberately under advice of learned counsel, he thus entered into this agreement, and he has no just cause of complaint, if the judgment recovered against him is thus to continue in full force, as it is very manifest the claims, which the complainant once had against the government, could in no way prove beneficial to the creditors.

The assignment which was tendered by the complainant, executed in February, 1872, was clearly not in accordance with the terms of the stipulation, as it is demonstrated that he was not the owner of any claims such as are provided for by the stipulation.

It is claimed that, prior to the execution of the stipulation, Ridgway well knew that there were no proceedings pending before the court of claims in complainant's behalf; and the complainant, in his testimony, states that he had before that informed Ridgway that his petition had been dismissed by that tribunal. This Ridgway, in his deposition, denies, and while the court entertains no doubt that Ridgway then knew the disposition made by the third auditor of the claim for general average, it does not appear that he was informed that no steps had been taken to prosecute the matter before the court of claims. The stipulation distinctly states that both of these claims were then pending before that court, and Ridgway swears that he then believed such was their condition, and acted upon this belief; and his statement is strongly corroborated by his conduct imme-

diately afterwards in advising complainant's counsel that, upon examination, he had ascertained these claims were not pending in the court, and, therefore, the creditors would not stand by the stipulation. He could hardly have entered into such a stipulation with such a recital therein, and at once proceed to act upon it and investigate as to the alleged claims, if he at the time was well aware that no such claims existed.

The complainant, having failed to perform the condition of the stipulation which he was bound to do if he would avail himself of it, is not entitled to the relief prayed for by his bill. Bill dismissed with costs.